JOSEPHINE E. ALBIN v. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

Decided May 9, 1906.

**1.—Failure to Stop Train at Station—Schedule.**

In a suit against a railroad company for failure to stop its passenger train at plaintiff's destination in order that plaintiff might alight, it appearing that plaintiff had no ticket to her destination but offered to pay full fare, the defendant answered that the train which plaintiff boarded was a fast passenger train which stopped only at the more important stations, not including plaintiff's destination; that the schedule of said train was regulated by a time card which was duly and regularly published; and that besides said fast train defendant operated daily another train which stopped at all stations for the accommodation of the local travel, to which class the plaintiff belonged. Held, defendant's answer was not subject to general exception.

**2.—Admission and Exclusion of Testimony—Harmless Error.**

It not being contended that plaintiff was entitled to damages solely on the ground of humiliating conduct on the part of the conductor toward her and independent of the legal right to eject her, errors in regard to testimony which concerns only the conductor's conduct can not have the effect of reversing the judgment.

**3.—Schedule—Stopping Places—Duty of Passenger.**

It is the duty of a person about to take passage on a train to inform himself as to its stopping according to the regulations of the company, and if he makes a mistake, not induced by the company against which ordinary care would have protected him, he has no remedy against the company for the consequences.

**4.—Same—Through Trains.**

Having provided the public with adequate accommodations by means of regular trains for a daily passenger service between all stations, a railroad company is at liberty to run other trains stopping at certain stations only.

Appeal from the County Court of Montgomery County. Tried below before Hon. Jas. T. Rucks.

*W. M. Williams* and *S. A. McCall,* for appellant.—When a depot is shown to be a passenger depot, the presumption is that it is a depot for all passenger trains, and it devolves upon the pleader, when exempting it as such, to plead such facts as will justify and excuse failure to so use it as such. Fetter on Carriers, vol. 1, p. 307; Hull v. East Line & Red River Ry. Co., 66 Texas, 619-20; Rev. Stats., arts. 4494 and 4496.

The court erred in giving the sixth special charge requested by the defendant, as follows:

"If you believe from the evidence that the plaintiff boarded defendant's train, known as the 'flyer,' at Conroe, Texas, without making inquiry to ascertain whether or not said train would stop for passengers to alight at Clinesburg, and without reasonable ground to believe said train would stop at said station in order to permit her to get off, then you will let your verdict be for the defendant."

That the relation of "Carrier and Passenger" did exist, see, Missouri, K. & T. Ry. Co. v. Williams, 91 Texas, 257-8; Houston & T. C. Ry. Co. v. Washington, 30 S. W. Rep., 719; Ray on Imposed Duties by Passenger Carriers, 4 to 7; Boothe's Street Railway Law, sec. 326, and notes; Beach, Law of Railways, art. 856; Thompson on Carriers, 42-43; Fetter on Carriers, vol. 1, par. 221.

A custom to stop a train at a station at which it is not scheduled to stop is a waiver of the regulation. Hull v. East Line & R. R. Ry. Co., 66 Texas, 619-20; Texas & P. Ry. v. Elliott, 22 Texas Civ. App., 31-32; Kohn v. Washer, 64 Texas, 132; Merriman v. Fulton, 29 Texas, 98; Storey on Agency, 127-443; Lawson on Carriers, 229-30; Hutcheson on Carriers, 267, 268, 269; Fetter on Carriers, vol. 1, p. 307.

Because the evidence showed that the rule or time card pleaded and relied upon by the defendant in this case in the operation of its said train, known as the "Flyer," and the method of enforcing the same, is unreasonable, illegal, and is a discrimination between persons seeking transportation to the station of Clinesburg, and especially on the very day plaintiff was ejected from its said train. Rev. Stats., arts. 4494, 4542; Eddy & Cross, Receivers, v. Rider, 79 Texas, 53; International & G. N. R. R. Co. v. Hinzie, Guardian, 82 Texas, 628; approved in Mahoney v. Detroit St. Ry., 93 Mich., 614; 53 N. W., Rep., 793.

*J. W. Terry* and *A. H. Culwell,* for appellee.—The appellee had the right to prescribe that certain of its trains would not stop at the station of Clinesberg for passengers. It likewise had the right to prescribe that this train would not stop to take on or put off passengers who had taken passage at certain given stations. It had the right to prescribe such a schedule for this train as in its judgment was desired, and having so prescribed, it is not and was not the province of appellant to complain. All that she had the right to ask were there train facilities which

would permit her to go to Clinesberg, and the evidence is uncontradicted that such facilities were furnished, to wit, other trains. Gulf, C. & S. F. Ry. Co. v. Moore, 11 Texas Ct. Rep., 424; St. Louis Southwestern Ry. Co. v. Campbell, 69 S. W. Rep., 452, and authorities there cited.

JAMES, CHIEF JUSTICE.—Plaintiff (Mrs. Albin) alleged that she boarded appellee's train at Conroe for Clinesburg and offered to pay the legal fare to the latter station, and was without lawful cause and with great force and violence and in a manner humiliating to her ejected from the train at the station of Waukegan (which was the station next before reaching Clinesburg), and upon this based her action for damages.

Defendant pleaded certain exceptions, and general denial. Also a special plea in substance as follows: That on August 23, 1904, appellee operated a daily mixed train between Conroe and Clinesburg which afforded ample passenger accommodations between said points, stopping each day at said stations. Also that on said date and for some time prior thereto, it operated a daily passenger train known as "The Flyer," said passenger train being operated from Beaumont to Somerville, Texas, and from Somerville to Beaumont. That said train was a fast passenger and stopped only at the more important stations. That it does not and did not, on said date, regularly stop at Clinesburg. That the schedule of said train was regulated by a time card which was duly and regularly published. That said train when east or south bound does not and did not on said date stop at the station of Clinesburg for the purpose of allowing passengers to debark at said station who took passage at Somerville or at points east and south thereof.

Plaintiff pleaded to this that if there ever existed such a time card, or if it was ever promulgated she had no knowledge of any such rule or regulation, and further that in the operation of said "Flyer" it was so frequently and commonly stopped at Clinesburg for the purpose of allowing passengers entering said train at intermediate points between Somerville and Clinesburg, and especially at the station of Conroe, to debark, that said rule was abrogated and was no justification for plaintiff's ejection on this occasion. That in the handling of said train divers persons boarding same at intermediate points for transportation to Clinesburg, with the knowledge and consent of appellee who accepted fares and tickets to the station of Clinesburg without objection, and which persons were allowed to debark at Clinesburg, by reason of which said train became a passenger train for all purposes for said station of Clinesburg, whereby appellee was estopped from urging said rule.

A verdict was returned for the defendant.

The first assignment of error attacks the sufficiency of the special answer. We hold that it was sufficient.

The eighth assignment complains of a question as leading, the answer to which is said to have been, "There was not any loud or boisterous language used by the conductor," The ninth also complains of a question as leading which evoked the following answer from the same witness: "I was in the first or second seat behind her and heard nothing about sick children. I was in a position to hear everything said loudly." The tenth complains of the exclusion of the following testimony given by another witness: "I never heard him use any insulting language, I

did not think he treated her with much respect. I was red-headed with him when he got through."

None of these points, if theoretically sound, can have the effect of reversing the judgment, for the reason that they all affect the manner in which plaintiff was treated by the conductor, in her eviction. The case for recovery was submitted by the court upon the issue of whether or not the conductor had the right to put her off the train, and that issue was found in favor of the defendant. Nowhere so far as appellant's brief shows, is there any contention that plaintiff was entitled to damages solely on the ground of improper or humiliating conduct on the part of the conductor toward her, and independent of the legal right to eject her. Under the circumstances errors in regard to testimony which concerns only the conductor's bearing towards plaintiff, can not have the effect of reversing the judgment.

The court by the first paragraph of the charge submitting the issues told the jury that if plaintiff boarded the train at Conroe without a ticket believing she did not have time to procure one, and with the *bona fide* intention to take passage thereon to Clinesburg and intending to pay the legal fare when demanded, that she thereby became a passenger and should recover, unless under instructions given in reference to defendant's special plea, such relation did not exist. Second paragraph: If bearing in mind what the first paragraph says in regard to the relation of passenger she so entered the train, and when called on by the conductor for her fare she tendered him four cents a mile between said stations, then under the law she was lawfully upon said train and became a passenger thereon between said stations of Conroe and Clinesburg and if thereafter the conductor used insulting language towards her and ordered plaintiff to leave the train and ejected her therefrom, refusing to further carry or transport her, etc., to find for plaintiff.

The next portion of the charge presented the case in its reference to the special plea, substantially as follows: That if on said date and prior thereto defendant operated its passenger train known as "The Flyer" between Beaumont and Somerville, and Somerville and Beaumont, that its schedule was regulated by a time card regularly published and promulgated, that as so operated it did not stop at Clinesburg for the reception and debarkment of passengers boarding same between Somerville and Cleveland, and futher, if they found that plaintiff with full knowledge of the manner of running said train, boarded same with the knowledge or consent of the agents and servants in charge thereof at Conroe intending to take passage thereon to Clinesburg, and further find that said plaintiff knew said train did not convey passengers from Conroe to Clinesburg and debark them, to find for defendant.

Then followed a paragraph which told the jury plainly that if they found said train was operated as above, yet if they found that the agents and servants in charge of such trains known as "The Flyer" so frequently and habitually violated such rule in transporting passengers from Conroe and other intermediate points between Somerville and Cleveland, as to show that the rule was not in force, then in law this would be an abrogation of such rule and it would afford no defense in this case.

The court at the instance of defendant gave the following special instruction: "If you believe from the evidence that the plaintiff boarded

defendant's train known as 'The Flyer,' at Conroe, Texas, without making inquiry to ascertain whether or not said train would stop for passengers to alight at Clinesburg, and without reasonable ground to believe that said train would stop at said station in order to permit her to get off, then you will let your verdict be for the defendant."

From the above instructions it will be seen that plaintiff was in plain terms allowed a recovery unless the rule was found to have been in force and effect governing the operation of the particular train, and even then plaintiff was declared to be entitled to recover if she had reasonable ground to believe that the train would stop at Clinesburg when she boarded it. This reasonable ground under the evidence here, existed, if it existed at all, in connection with the habit, if any, of the train stopping at Clinesburg for such purpose.

Appellee was operating another daily train for passengers between the stations of Cleveland and Somerville, which stopped at all stations, among them Clinesburg. This train is known as the "Boll Weevil." There was evidence that "The Flyer'" had been put on in June, 1904, and when southeast bound, it stopped at all stations between Cleveland and Beaumont, but between Somerville and Cleveland it stopped only at the larger stations, except when stopped by flag from the smaller stations, one of which was Clinesburg, for the purpose of taking passengers who desired to go to some point southeast of Cleveland, or it would stop at such stations to let off passengers coming from the north of Somerville and from other railroads connecting with the Santa Fe. When north bound, that is, going from Beaumont to Somerville, the train stopped at all stations between Beaumont and Cleveland, but between Cleveland and Somerville it stopped regularly at only the larger stations, but would stop at intermediate stations when flagged to take on passengers bound for some point north of Somerville, or to let off passengers who got aboard at some station east of Cleveland. In other words that this train was under a rule or regulation to stop at such points as Clinesburg between Somerville and Cleveland, in such cases only, and between said points defendant operated another and sufficient daily passenger train stopping at all places.

There was evidence that the Flyer stopped at Clinesburg only when required to for the purposes indicated above, that it did not habitually stop there, and that it was generally known at Clinesburg where plaintiff lived, that such was the rule under which it was being operated.

There was evidence that plaintiff was promptly informed by the conductor that the train was not scheduled to stop at Clinesburg, that he refused to accept fare from her to Clinesburg and thus contract to take and leave her there, that he offered to take her fare to the next regular stopping place beyond Clinesburg, she to take the chance of the train stopping at Clinesburg, but this she refused, unless the conductor would agree to let her off at Clinesburg, which he declined to do. Thus it appears from the evidence in the case, that the duty of the conductor required him to pass Clinesburg unless the train happened to be flagged at that point, which he could not know until he reached there. That under these circumstances when the train reached Waukegan she was put off the train, she refusing to pay fare to the next station and take the chance of the train being flagged to stop at Clinesburg, and he re-

fusing to make a contract to stop the train at Clinesburg for her, by accepting the fare to that point.

There was sufficient evidence to warrant the jury in finding that plaintiff sufficiently knew the circumstances relative to the stopping of this train at Clinesburg to make it appear that she got upon this train without reasonable ground for believing that it would stop at that station, and as the jury must have found the facts to be in accordance with this theory, the verdict should be sustained, if the instructions given by the court embodied the law correctly on the subject.

The only charge complained of is the special charge above copied. It is vigorously attacked. But in our opinion the criticisms do not affect it. It did not authorize a verdict for defendant unless two things concurred, namely, that plaintiff boarded the train without making inquiry as to whether or not it would stop at Clinesburg; and further, that she had no reasonable ground to believe that it would stop there. If the jury found for defendant under this charge they necessarily found that she had no reasonable ground for believing that it would stop there, because their finding had to include that fact, if they found for defendant under that charge. If they found that fact, it was immaterial that she failed to make inquiries. Neither did the charge conflict with the main charge, for under all the evidence presented, whatever ground she had for believing or not believing that it would stop at Clinesburg, had reference to the custom or manner of stopping the train at that place.

The law of the case appears to be now well settled. It is the duty of a person about to take passage on a train to inform himself as to its stopping according to the regulations of the company, and if he makes a mistake not induced by the company against which ordinary care would have protected him, he has no remedy against the company for the consequences. (Beauchamp v. International & G. N. Ry., 56 Texas, 240.)

We are inclined to think that if the company is known to habitually stop at a station, and a person is misled by this to so believe and boards such train in the belief, so induced by the conduct of defendant, he would acquire a right to be let off there. That issue was presented by a charge which in effect told the jury to find for plaintiff if the train was so operated as to induce the belief that the rule relied on had been abrogated, or plaintiff had reasonable ground to believe that the train would stop there.

Defendant had a right to run a system of fast trains between Cleveland and Somerville, stopping at certain stations only, having complied with the law and provided the public with adequate accommodations by means of other regular trains for a daily passenger service between those places, stopping at all stations. Having done this, the statute was satisfied, and it was at liberty to run other trains stopping at certain stations only between those points. (Railway v. Moore, 11 Texas Ct. Rep., 424.)

If Clinesburg was one of the stations at which such train was not scheduled to stop, plaintiff could not by boarding the train without having made inquiry as to whether she was boarding the right train, acquire the right to have it stop there. This, however, is subject to exceptions, such as where, by some act of the defendant's agents and

servants, she has been led to take the particular train. In this case the court in effect told the jury to find for her unless they found she knew of the rule, or that she entered the train without reason to believe it was to stop at Clinesburg.

According to evidence in the record, which the jury had a right to accept, this "Flyer" had been operated under the arrangement indicated by the testimony of the conductor and others, for several months; it passed Clinesburg as often as it stopped there; it was generally understood at Clinesburg that it would not stop there regularly, and only under special circumstances. Plaintiff lived at Clinesburg not far from the depot. Clinesburg was evidently a small place.

The jury must have considered from the evidence that she had knowledge of the regulation, and that she had no reason leading her to believe on this occasion that this particular train was to be stopped there.

The printed time card concerning the "Flyer" was introduced as evidence by defendant and is in the record. The assignments of error in reference to this instrument are not sustained. The time card if susceptible of the construction that it provided for this train to stop at Clinesburg for all classes of passengers, it was not so construed, understood or acted upon by defendant, its servants and agents. The fact is that by virtue of the time card as understood by them, the train had been operated between said stations for months in the manner testified to by the conductor and others. Plaintiff did not claim to have been misled by the time card or that she had ever seen one, and the jury evidently found that her knowledge of the circumstances connected with the stopping of the train at Clinesburg was such as to give her notice of the regulations under which it was being operated.

*Affirmed.*